UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brian Thorvald Ulrich,                                                         Civil No. 12-148 (DWF/LIB)

        Plaintiff,

v.                                                                           **MEMORANDUM**
                                                                            **OPINION AND ORDER**

Pope County, and Deputy Gilbert Mitchell,
and Deputy Eric Thesing, in their individual
and official capacities,

        Defendants.

_____

Zorislav R. Leyderman, Esq., The Law Office of Zorislav R. Leyderman, counsel for Plaintiff.

Jon K. Iverson, Esq. and Stephanie A. Angolkar, Esq., Iverson Reuvers, LLC, counsel for Defendants.

_____

# INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by Defendants Pope County, Deputy Gilbert Mitchell ("Deputy Mitchell"), and Deputy Eric Thesing ("Deputy Thesing"). (Doc. No. 5.) For the reasons stated below, the Court grants Defendants' motion.

# BACKGROUND

On October 21, 2009, the Douglas County District Court issued a Harassment Restraining Order against Plaintiff on behalf of Kristen Crane (now known as Kristen Mohs) ("Ms. Mohs") and her minor children MaKenzie Ronning, C.R., and M.R. (Doc.

No. 1, Compl. ¶ 11; Doc. No. 8, Angolkar Aff. ¶ 2, Ex. 1 ("Restraining Order").) The Restraining Order provided that Plaintiff "shall not harass" and "shall have no contact" with Ms. Mohs or her children, and ordered Plaintiff to stay away from Ms. Mohs' residence and place of employment, the Minnewaska School District. (Restraining Order at 2.) The Restraining Order also specified that any contact—direct or indirect—between Plaintiff and Ms. Mohs or her minor children, constituted a violation of the order. (*Id.*) The Restraining Order was scheduled to expire automatically on October 21, 2011. (*Id.*)

On May 27, 2011, Plaintiff attended the graduation ceremony of MaKenzie Ronning at the Minnewaska Area High School.[1] (Compl. ¶¶ 9, 11-12.) An individual reported Plaintiff's presence at the ceremony. (*Id.* ¶ 15.) Deputy Mitchell approached Plaintiff, confirmed his identity, and asked to speak with him in the hallway. (*Id.* ¶ 17.) In the hallway, Deputy Mitchell asked Plaintiff if Plaintiff was aware that he was violating the Restraining Order. (*Id.* ¶ 18.) Plaintiff denied that he was violating the Restraining Order. (*Id.*)

Deputy Thesing arrived to assist. (*Id.* ¶ 19.) Plaintiff told the deputies that Ms. Mohs was no longer employed by the Minnewaska School District. (*Id.* ¶ 19.) Deputy Thesing obtained a copy of the Restraining Order. (*Id.* ¶ 18.) Deputy Thesing went to speak with Ms. Mohs; Ms. Mohs confirmed that she was no longer employed

---

[1]  Plaintiff alleges that he only intended to watch the ceremony and that he wanted to be present because he was significantly involved in MaKenzie Ronning's life while he was dating Ms. Mohs. (Compl. ¶¶ 10, 12.)

2

with the Minnewaska School District, that Plaintiff had not had contact with her that evening, but that she wanted Plaintiff arrested.  (*Id.* ¶ 20.)

Deputy Thesing returned and told Plaintiff that he was "technically correct" and that he had not violated the Restraining Order, but then the deputies instructed Plaintiff to leave the building.  (*Id.* ¶ 21.)  Plaintiff responded that he had done nothing wrong, that it was important for him to be able to watch the graduation, that he had driven a long way, and that he intended to return to the gymnasium.  (*Id.* ¶ 22.)  Deputy Thesing indicated that Plaintiff would be arrested if he did not leave the building.  (*Id.*)  Plaintiff continued to refuse to leave and was eventually arrested.  (*Id.* ¶ 25.)  Plaintiff was booked and transported to the Douglas County Jail, where he remained for approximately ninety hours.  (*Id.* ¶ 27.)  Plaintiff was charged with Violation of Restraining Order.  (*Id.* ¶ 32.)  The charges were continued for dismissal for one year or until the Restraining Order expired.  (Angolkar Aff. ¶ 4, Ex. 3.)

Plaintiff brought this action against Pope County and Deputies Mitchell and Thesing, in both their individual and official capacities.  In his Complaint, Plaintiff asserts four causes of action:  Count I—42 U.S.C. § 1983 (First Amendment Violation Against Individual Defendants); Count II—42 U.S.C. § 1983 (Unreasonable Seizure and Illegal Arrest Against Individual Defendants); Count III—42 U.S.C. § 1983—(First Amendment Violation and Unreasonable Seizure Against Pope County); and Count IV--False Imprisonment Against All Defendants Under Minnesota State Law.  Defendants move to dismiss the entire case because Deputies Mitchell and Thesing are entitled to qualified and official immunity, and because there is no constitutional

violation to support a *Monell* claim.

## DISCUSSION

**I.      Legal Standard**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.     Motion to Dismiss—Qualified Immunity

The individual defendants make several arguments for dismissal based on the doctrine of qualified immunity. The doctrine of qualified immunity protects state actors from civil liability when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

To prevail on qualified-immunity grounds at the motion-to-dismiss stage of the proceedings, "defendants must show that they are entitled to qualified immunity on the face of the complaint." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005). The threshold question for the application of a qualified-immunity defense in a suit against a law enforcement officer for an alleged violation of a constitutional right is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Even if an officer violated a constitutional right, he will still be entitled to qualified immunity unless the constitutional right is clearly established, and it would be

clear to a reasonable officer that his conduct was unlawful in the situation within which the officer in question was confronted. *Id*. at 202.[2]

Thus, the Court first examines whether Deputies Mitchell and Thesing violated Plaintiff's constitutional rights under the First and Fourth Amendments.

### A. Fourth Amendment

Plaintiff argues Deputies Mitchell and Thesing arrested him without probable cause to believe that Plaintiff violated the Restraining Order. In particular, Plaintiff argues that: he knew that the employment provision of the Restraining Order was no longer in effect; he had no intention of coming into any contact with the petitioners named in the Restraining Order; he and his wife were situated in the very back, top corner of a large school gymnasium; Deputy Thesing indicated that Plaintiff was "technically correct" in that Plaintiff had not violated the Restraining Order; there is no evidence that Plaintiff attempted to contact, gesture to, or intimidate the petitioners; and that in fact he did not see the petitioners in the gymnasium.

Deputies Mitchell and Thesing arrested Plaintiff for violating the Restraining Order under Minnesota Statutes § 609.748, subd. 6, after he refused to leave MaKenzie Ronning's graduation ceremony. Both Ms. Mohs and MaKenzie Ronning were in attendance, and both were protected by the Restraining Order. Under the relevant statute,

---

[2] The Court has discretion to decide which qualified immunity prong to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

it is a misdemeanor to violate a restraining order when the person violating knows it is in place.  Minn. Stat. § 609.748, subd. 6.

Plaintiff argues that his arrest violated the Fourth Amendment.  A warrantless arrest, unsupported by probable cause, violates the Fourth Amendment.  *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010).  Probable cause is defined as a reasonable probability that a crime has been or is being committed.  *Id*. at 474.  In the context of qualified immunity, the Court determines whether *arguable* probable cause exists to arrest.  *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008).  Here, the Restraining Order prohibits both direct and indirect contact with Ms. Mohs and MaKenzie Ronning—both of whom were at the ceremony.  Indirect contact may include presence in the vicinity of the protected persons.  *See, e.g.*, *State v. Hazeman*, Civ. No. C8-01-1458, 2002 WL 1050364, *2 (Minn. Ct. App. May 28, 2002).  Plaintiff acknowledges that he attended the graduation ceremony and that he knew the Restraining Order was in place.  Based on these facts alone, a reasonable officer could have concluded that probable cause existed to arrest Plaintiff.[3]  Because probable cause existed, the Deputies Mitchell and Thesing did not violate Plaintiff's constitutional rights

---

[3]   The existence of arguable probable cause is not negated by the fact that Deputy Thesing indicated that Plaintiff was "technically correct" in that he had not violated the Restraining Order.  A deputy's subjective intent is irrelevant as to whether probable cause existed.  *See, e.g.*, *United States v. Chauncey*, 420 F.3d 864, 871 (8th Cir. 2005).  The existence of probable cause depends on the viewpoint of an objectively reasonable officer.  *See Ornelas v. United States*, 517 U.S. 690, 696 (1996).  On the facts alleged in the Complaint, an objectively reasonable officer could have concluded that Plaintiff violated the Restraining Order when he attended MaKenzie Ronning's graduation ceremony.

under the Fourth Amendment. Accordingly, they are entitled to qualified immunity, and Count II is properly dismissed.

### B.   First Amendment

Plaintiff asserts that Deputies Mitchell and Thesing violated his rights under the First Amendment by preventing him from attending and participating in a public meeting or event. (Compl. ¶ 37.) However, as the Court found above, Plaintiff was validly arrested by the deputies. Accordingly, Plaintiff's First Amendment claim fails, and Count I is properly dismissed.

### III.   False Imprisonment

Plaintiff asserts a state-law claim for false imprisonment against defendants. Defendants argue that this claim is barred by the doctrine of official immunity. Official immunity is a common law doctrine that provides public officials with a defense to state-law tort claims. *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006). "Official immunity prevents a public official charged by law with duties which call for the exercise of his judgment or discretion from being held personally liable for damages, unless the official has committed a willful or malicious act." *Id.* at 490 (internal quotations omitted). In conducting an official immunity analysis, a court must first determine whether the conduct at issue involved ministerial or discretionary duties. *Id.* If the duties are discretionary, the issue then becomes whether the official acted willfully or maliciously. *Id.*

Here, Deputies Mitchell and Thesing were exercising their discretion when they arrested him for violating the Restraining Order after he refused their requests to leave.

*See, e.g.*, *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 665 (Minn. 1999) ("[M]aking an arrest involves precisely the type of discretionary decisions, often split-second and on meager information, that we intended to protect from judicial second-guessing through the doctrine of official immunity."). Thus, to overcome the protection of official immunity, Plaintiff must demonstrate that Deputies Mitchell and Thesing acted willfully or maliciously. There are no facts alleged in the Complaint that would suggest that Deputies Mitchell and Thesing acted willfully or with malice. Accordingly, Deputies Mitchell and Thesing are entitled to official immunity, and Count IV is properly dismissed.

**IV.**   *Monell* **Claim**

In Count III of his Complaint, Plaintiff alleges that Pope County developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in Pope County and that Pope County failed to adequately supervise and train its employees.

It is well-established that a governmental entity cannot be held liable under § 1983 on a respondeat superior theory. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). For a municipality to be liable under § 1983, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Id*. at 694.

Plaintiff's *Monell* claims fail for two primary reasons. First, as discussed above, Plaintiff's claims that Deputies Mitchell and Thesing violated his constitutional rights both fail. Without a constitutional violation, there can be no claim against Pope County.

*See Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007). Moreover, Plaintiff has alleged no other facts that would demonstrate a widespread policy or custom that would require or cause an individual's constitutional rights to be violated. Thus, Plaintiff's claims against Pope County are properly dismissed.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

1. Defendants' Motion to Dismiss (Doc. No. [5]) is **GRANTED**.

2. Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 5, 2012                    s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        United States District Judge